EJP DELIVERY,

               Plaintiff,

v.                                                       Case No. 18-cv-828-pp

FEDEX GROUND,

               Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND GRANTING DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(B)(3) (DKT. NO. 17)**

      The plaintiff, a third-party carrier, has sued FedEx for intentional breach of contract, tortious breach of contract and breach of an oral agreement. Dkt. No. 1. In lieu of an answer, the defendant filed a motion to compel arbitration under the Federal Arbitration Act and to dismiss the case under Federal Rule of Civil Procedure 12(b)(3). Dkt. No. 17. The plaintiff objects, arguing that the arbitration clause in a 2016 addendum to the contract between the parties was unconscionable, illusory and made under duress. Dkt. No. 18. Because the parties agreed to arbitrate their dispute and delegated to the arbitrator questions of the validity of the agreement, and because the agreement requires arbitration in a district other than this one, the court will dismiss the case for improper venue under Rule 12(b)(3).

1

A. <u>Legal Standard</u>

Section 4 of the Federal Arbitration Act allows a court to compel arbitration only within the district in which the motion to compel arbitration is filed. Fed. R. Civ. P. 12(b)(3) allows a party to seek dismissal of a case for improper venue. "[A] Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when [an] arbitration clause requires arbitration outside the confines of the district court's district." <u>Faulkenberg v. CB Tax Franchise Systems, LP</u>, 637 F.3d 801, 808 (7th Cir. 2011) (citing <u>Cont'l Ins. Co. v. M/V Orsula</u>, 354 F.3d 603, 606-07 (7th Cir. 2003)). When ruling on a Rule 12(b)(3) motion to dismiss for improper venue, the court may consider facts outside of the complaint. <u>Id.</u> at 809-810 ("on a motion to dismiss for improper venue, the district court is not 'obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment' if the parties submit evidence outside the pleadings.") (quoting <u>Cont'l Cas. Co. v. Am. Nat'l Ins. Co.</u>, 417 F.3d 727, 733 (7th Cir. 2005)).

B. <u>Facts</u>

1. *The Agreement*

On June 4, 2008, the parties entered into a FedEx Home Delivery Standard Operating Agreement. Dkt. No. 17-2. Under this agreement the plaintiff would deliver packages to customers on behalf of the defendant and would be compensated for each package delivered. Dkt. No. 1 at 2. Section 9.3 of the agreement was titled "Arbitration of Asserted Wrongful Termination."

Dkt. No. 17-2 at 22. It provided that if the defendant terminated the agreement and the plaintiff disagreed, the dispute would be settled by arbitration. Id.

The defendants attached to their motion a document with a print date of August 9, 2016, titled "ADDENDUM 7 FEDEX HOME DELIVERY STANDARD CONTRACTOR OPERATING AGREEMENT ARBITRATION AND CONFIDENTIAL INFORMATION." Dkt. No. 17-3. The addendum purported to replace Section 9.3 of the agreement between the parties. Id. at 2, §I. The relevant portions of that addendum read as follows:

> **(A) Dispute Resolution Procedure.** Any dispute, claim or controversy between the Parties arising out of or relating in any way to this Agreement and/or the relationship between the Parties resulting from this Agreement, including without limitation with respect to the interpretation of any provision of this Agreement, the performance by Contractor or FedEx Ground, the treatment by one Party of the other, and/or the termination of this Agreement ("Dispute") will be resolved in accordance with the dispute resolution procedure provided in this Addendum.
>
> . . . . .
>
> **(C) Arbitration.** In their mutual interest to resolve Disputes promptly and efficiently, the Parties have agreed to abide by the following mandatory arbitration provisions and the confidential arbitration procedures in Paragraph (E)(5). The Parties agree that any dispute that would be recognized in a court of appropriate jurisdiction including any claim or controversy between the Parties arising since the effective date of this amended Addendum 7 and out of or relating in an way to this Agreement and/or the relationship between the Parties resulting from this Agreement, including without limitation the interpretation of any provision of this Agreement, the performance by Contractor or FedEx Ground, the treatment of one Party of the other, the termination of this Agreement and/or the determination of the scope or applicability of this agreement to arbitrate, shall be determined by final, binding arbitration. Such agreement to arbitrate applies to all Disputes between the Parties that accrued or arose on or after the effective date of this amended Addendum 7, regardless of whether this Agreement has been terminated by either Party. The arbitrator shall

3

have exclusive authority to resolve any Disputes concerning the formation, existence, validity, enforceability, interpretation, or scope of this agreement to arbitrate. No suit at law or in equity based on any Dispute or controversy shall be instituted by either Party hereto, other than a suit to confirm enforce, vacate, modify or correct the award of the arbitrator as provided by law. . . . **THE PARTIES ACKNOWLEDGE THAT THE RIGHT TO A COURT TRIAL AND TRIAL BY JURY IS OF VALUE. BY SIGNING THIS AGREEMENT, THE PARTIES KNOWINGLY AND VOLUNTARILY WAIVE SUCH RIGHT FOR ANY DISPUTE, SUBJECT TO THE TERMS OF THE AGREEMENT TO ARBITRATE.**

. . . . .

**(E)(1) Commencement of Arbitration.**

\* \* \* \*

Unless the Parties agree to a different location, any hearing will take place at the AAA [American Arbitration Association] or JAMS [Judicial Arbitration and Mediation Services] office that is nearest to the Primary Service Area involved in the Dispute.

Dkt. No. 17-3 at 2-3 (emphasis in original). The defendant's "P&D Manager" and the plaintiff's president signed the addendum on August 24, 2016. Dkt. No. 17-4 at 3.

2.  *The Dispute*

The complaint alleges that the defendant failed to treat the plaintiff and its employees with the fairness and provide the assistance that was accorded to other contractors operating under similar agreements. Dkt. No. 1 at 2-6. The plaintiff asserts that this lack of cooperation and increase in volume left it understaffed, unable to hire new employees and unable to meet delivery quotas. Id. at ¶45. It asserts that it received notice on April 10, 2017 that the defendant was terminating the contract, id. at ¶46, and that after termination,

4

its routes were reduced in value and the plaintiff was forced to see its routes at a steep discount, id. at ¶¶49-50.

### 3. *History Regarding Arbitration*

On October 3, 2017 the plaintiff provided written notice to the American Arbitration Association—one of the two arbitration organizations the addendum specified—that "[i]n accordance with the requirements of addendum 7 of FedEx home delivery standard contractor operating agreement," it was providing written notice of its pending demand for arbitration, and that it intended to request arbitration in Milwaukee County. Dkt. No. 17-6 at 1. The plaintiff attached to the notice a document titled Addendum 7, but it was not the same Addendum 7 that the defendant attached to its motion to compel. This Addendum 7 was marked "Version 2015.08.01," and the print date was August 22, 2015. Id. at 4. It appears that this Addendum 7 pre-dated the one the defendant attached to its motion by almost a year.

Some three weeks later, on October 27, 2017, the plaintiff sent a second letter to the AAA, stating that "we do not intend to proceed through arbitration at this present time." Dkt. No. 17-7. The letter indicated that if the plaintiff changed its mind, it would "provide full payment along with the pleadings." Id. The plaintiff filed this suit seven months later.

### C. Analysis

The plaintiff's opposition brief does not argue that the plaintiff did not sign the 2016 addendum or that the 2016 addendum does not exist. Rather, it argues that the 2016 version of Addendum 7 is invalid—that the addendum is

5

unconscionable, dkt. no. 18 at 5, that its fee provision was prohibitive toward third-party carries such as itself, dkt. no. 18 at 8, that the plaintiff agreed to the 2016 addendum under duress, dkt. no. 18 at 8, and that the plaintiff's October 3, 2017 notice to AAA maintained its right to arbitrate under "the original arbitration clauses in the event that arbitration was compelled," dkt. no. 18 at 8-9.

But the 2016 addendum contains a delegation clause, which delegates to the *arbitrator* the "exclusive authority to resolve any Disputes concerning the formation, existence, validity, enforceability, interpretation, or scope of this agreement to arbitrate." Dkt. No. 17-3 at 2. The clause provides that "no suit at law or in equity based on any Dispute or controversy shall be instituted by either Party hereto, other than a suit to confirm, enforce, vacate, modify or correct the award of the arbitrator as provided by law." Id.

Parties can agree to arbitrate "gateway questions" of arbitrability. Rent–A–Center, W., Inc. v. Jackson, 561 U.S. 63, 68–69 (2010). A delegation clause gives the arbitrator authority to decide the initial question of whether the dispute is subject to arbitration. New Prime, Inc. v. Oliveira, 139 S. Ct. 532, 539 (2019). The severability principle allows this court to treat a challenge to the validity of the arbitration agreement or delegation clause separately from the challenge to the validity of the entire contract. Id. The delegation clause in this case unequivocally covers the "formation, existence, validity, enforceability, interpretation, or scope of this agreement to arbitrate." An arbitrator must

6

resolve the parties' dispute unless the court finds the delegation provision is unconscionable or otherwise invalid.

The plaintiff's opposition brief cites Wisconsin law in support of its argument that the 2016 addendum is invalid. Dkt. No. 18 at 5-6. The June 4, 2008 agreement, however, provides that it "shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania." Dkt. No. 17-2. The plaintiff bears the burden of showing unconscionability. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). For a contract to be unconscionable under Pennsylvania law, it must be both procedurally and substantively unconscionable. Gay v. CreditInform, 511 F.3d 369, 392 (3rd Cir. 2008).

Procedural unconscionability examines the process leading to the formation of the contract and the form and the language of the agreement. Porreca v. Rose Grp., No. 13-1674, 2013 WL 6498392, *7 (E.D. Pa. Dec. 11, 2013). The Pennsylvania Supreme Court has defined unconscionability as the "absence of meaningful choice on the part of one of the parties." Witmer v. Exxon Corp., 434 A.2d 1222, 1228 (1981). Procedural unconscionability is generally found in contracts of adhesion. Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 264 (3d Cir. 2003). A contract of adhesion is prepared by a party with excessive bargaining power and presented to the other party on a "take it or leave it" basis. Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 276 (3d Cir. 2004). The touchstone is whether the party challenging the agreement

7

Case 2:18-cv-00828-PP   Filed 09/25/20   Page 7 of 9   Document 22

had any meaningful choice regarding acceptance of its provisions. Thibodeau v. Comcast Corp., 912 A.2d 874, 886 (Pa. Super. Ct. 2006).

Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179 (3rd Cir. 1999). To establish substantive unconscionability, the plaintiff must show that the contractual terms are unreasonably favorable to the drafter, and there is no meaningful choice on the part of the other party regarding acceptance of the provisions. Bullick v. Sterling, Inc., No. Civ.A. 03-6395, 2004 WL 2381544, at *10 (E.D. Pa. Oct. 21, 2004).

The plaintiff asserts both procedural and substantive unconscionability, and Pennsylvania law requires both. But the court cannot conclude that the delegation clause of the 2016 addendum is *substantively* unconscionable. The delegation clause does not favor one party over another—it is a neutral provision. Nothing about the delegation clause indicates that the arbitrator would be more likely to decide disputes of validity in favor of the defendant than in favor of the plaintiff. Because the plaintiff has not met its burden of showing that the delegation clause is substantively unconscionable, the court must leave to the arbitrator the determination of the validity of the 2016 addendum.

The court will not, however, grant the defendant's request to compel arbitration. As the court noted above, when a motion to compel asks a district court to compel arbitration in a district other than its own, the proper

8

procedure is to dismiss for improper venue. Faulkenberg, 637 F.3d at 808. The 2016 addendum provides that

> [u]nless the parties agree to a different location, any hearing will take place at the AAA or JAMS office that is nearest to the Primary Service Area involved in the Dispute.

Dkt. No. 17-3 at 3.

Both the nearest AAA office (https://www.adr.org/OfficeLocations) and the nearest JAMS office (https://www.jamsadr.com/locations/) are in Chicago, Illinois (the Northern District of Illinois). Given that, if the court were to grant the motion to compel, it would be compelling arbitration in a district other than the Eastern District of Wisconsin, an action prohibited by Section 4 of the Federal Arbitration Act. The court will instead grant the defendant's motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3).

D.  Conclusion

The court **DENIES** the defendant's motion to compel arbitration. Dkt. No. 17.

The court **GRANTS** the defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue. Dkt. No. 17.

The court **ORDERS** that this case is **DISMISSED** and will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 25th day of September, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**